**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| RAVIV LAOR, | Civil No.: 08-3532 (RBK) |
| Petitioner, |  |
| v. | **O P I N I O N** |
| FEDERAL BUREAU OF PRISONS, et al., |  |
| Respondents. |  |

**APPEARANCES:**

    RAVIV LAOR, Petitioner Pro Se
    #83904-054
    F.C.I. Fort Dix
    Camp 1 P.O. Box 2000
    Fort Dix, NJ 08640

    JOHN ANDREW RUYMANN, AUSA
    OFFICE OF THE U.S. ATTORNEY
    402 East State Street, Suite 430
    Trenton, New Jersey 08608
    Counsel for Respondent

**KUGLER**, District Judge

On or about July 15, 2008, petitioner, Raviv Laor ("Laor"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges a prison disciplinary proceeding. The named respondents are the Federal Bureau of Prisons ("FBOP"); Harley Lappin, Director of the FBOP; FCI Fort Dix Warden Jeff Grondolsky; A.J. Lewis, former Unit Manager of FCI Fort Dix Camp; Kenneth Byrd and Tasha Gilyard, Case Managers

and members of the Unit Disciplinary Committee at FCI fort Dix Camp; and Officer Douglas Odell.  Respondents answered the petition on December 15, 2008, and provided a copy of the pertinent administrative record.  (Docket Entry No. 8).  On January 28, 2009, this Court received petitioner's reply.  (Docket Entry No. 9).  For the reasons set forth below, the petition for habeas relief under § 2241 will be denied for lack of merit.

## I.  BACKGROUND

Laor challenges a prison disciplinary finding, which resulted in the loss of 7 days good conduct time ("GCT").  He contends that his right to due process was violated because he was denied the opportunity to present documentary evidence at his disciplinary hearing.  He also argues that the disciplinary charges against him were not supported by the evidence.

Laor is presently serving a 65-month prison sentence, to be followed by three years of supervised release, as imposed by the United States District Court for the Southern District of New York, on August 23, 2005, for his conviction on charges of mail fraud, wire fraud, obstructing or impeding the administration of the Internal Revenue Service ("IRS"), and failure to file tax returns.  His projected release date is September 15, 2009, assuming Laor earns all GCT available to him.

The incident at issue in this habeas petition occurred on January 9, 2008, while Pachtinger was confined at FCI Fort Dix Camp. The Incident Report, number 1686440, states that, on January 9, 2008, at about 12:45 p.m., Laor was charged with the prison misconduct of using equipment contrary to instructions and safety procedures (Code 319), lying to a staff member (Code 313), and using any equipment that is not specifically authorized (Code 318). Pursuant to the Incident Report, the reporting officer, Foreman Odell, described the incident as follows:

> On 1-9-08 at approximately 12:45 p.m., I observed inmate Raviv Laor Reg.# 83907-054 driving a golf car marked Hummer on the front of it. He was driving from the west compound staff parking lot to the prison camp on Hartford street. Upon reaching the edge of Hartford street he realized that my truck (J113FTD) was coming from his right hand side. At the last minute he tried to correct his error and turned the hand wheel hard to the right. The golf car rolled onto it's [sic] left side and landed in the middle of Hartford street. I asked inmate Raviv Laor "Where are you going?" Inmate Laor responded "I was taking this golf car to the garage for repair. I was instructed to do so by foreman George from the welding shop." I interviewed foreman Courtney George and Foreman Charles Kensil and found that this inmate was lying. Please see the attached memos.[1]

---

[1] The memos, both dated January 9, 2008, confirm that express permission had not been given by Foreman Courtney George or Foreman Charles Kensil to petitioner Laor. Specifically, Kensil's memo states: "On January 9, 2008 at approximately 12:30PM inmate Raviv Laor Reg. #83907-054 stated that foreman Courtney George instructed him to transport a golf car marked "Hummer" on the front of it to the 5720 garage. At approximately 1:00PM I spoke to Courtney George and he stated that he did not give inmate Raviv Laor Reg. #83907-054 those instructions."

Foreman George's memo states: "On January 9 2008 at approximately 1:00PM I was approached by Charles Kensil HVAC Foreman. He asked me if I had given inmate Raviv Laor Reg.

(See Incident Report, Respondents' Declaration of Tara Moran ("Moran Decl.") at ¶ 3, Exhibit 2).

An initial hearing on the disciplinary charges was held on January 10, 2008 before the Unit Disciplinary Committee ("UDC"). The UDC referred the incident to the Disciplinary Hearing Officer ("UDC") for final disposition based on petitioner's repetitive misconduct.[2] (Moran Decl. at Ex. 2, Incident Report, §§ 19-20).

On January 24, 2008, a DHO hearing was held and the DHO found that Laor committed the Code 313 violation (lying to a staff member) and the Code 318 violation (using equipment that is not specifically authorized). Specifically, the DHO found against the petitioner, as follows:

> I find that on or about January 9, 2008, at 12:45 p.m., on Hartford Street by the Federal Prison Camp, Fort Dix, New Jersey, you did commit the prohibited act of using any equipment that is not specifically authorized and lying to a staff member.
>
> This decision is based on the greater weight evidence provided before me which is documented in the written report provided by the reporting employee. The employee documented,
>
> "On 1-9-08 at approximately12:45pm, I observed inmate Raviv Laor Reg. #83907-054 driving a golf cart marked Hummer on the front of it. He was driving from the west compound staff parking lot to the prison camp on Hartford street.

---

#83907-054 a direct order to take a golf car marked "Hummer" on the front of it to the 5720 garage. My response to foreman Kensil was "No". (See Respondents' Declaration of Tara Moran ("Moran Decl.") at ¶ 3, Exhibit 2).

[2] There is no elaboration in the Incident Report by the UDC as to the "repetitive misconduct" noted in Section 19.

Upon reaching the edge of Hartford street he realized that my truck (J113FTD) was coming from his right hand side. At the last minute he tried to correct his error and turned the hand wheel hard to the right. The golf car rolled onto it's [sic] left side and landed in the middle of Hartford street. I asked inmate Raviv Laor "Where are you going?" Inmate Laor responded "I was taking this golf car to the garage for repair. I was instructed to do so by foreman George from the welding shop." I interviewed foreman Courtney George and Foreman Charles Kensil and found that this inmate was lying. Please see the attached memos."

I took into consideration your statements, specifically, "My boss told us to keep busy like raking leaves, clearing the area, etc. Another inmate came from the garage. The inmate said he had to take two LEAPS to the garage by towing one with the other. I volunteered to drive the LEAP so he would not have to tow it. I told Mr. Kensil that I'm taking the LEAP to the garage. As I was driving the LEAP the van did come down the road as I turned the LEAP it did fall over. I jumped off." The DHO asked if he knew the LEAP was not working? He stated: "The cart was modified. I knew there were other things wrong with it." The DHO asked did your boss specifically tell you to take the cart? He stated "I never asked my boss if I could use it. He was on the phone and just waived me off. There are no procedures for taking the carts it is just informal." as supporting the incident report as written for violation of code 318, use of any equipment that is not specifically authorized. You did not have permission of a staff member to use the golf cart. This is supported by your statement, "I volunteered to drive the LEAP so he would not have to tow it." This corroborates the incident report as written as the report states, "On 1-9-08 at approximately 12:45 pm, I observed inmate Raviv Laor Reg. #83907-054 driving a golf cart marked Hummer on the front of it. He was driving from the west compound staff parking lot to the prison camp on Hartford street."

The violation of code 313, lying to a staff member, is supported by your statement, "I told Mr. Kensil that I'm taking the LEAP to the garage." Then you state "I never asked my boss if I could use it. He was on the phone and just waived me off." The incident report is corroborated by the memorandums dated January 9, 2008, specifically the memorandum written by C. George states, "On January 9, 2008 at approximately 1:00 PM I was approached by Charles Kensil HVAC Foreman. He asked me if I had given inmate Raviv Laor Reg. #83907-054 a direct order to take the golf car marked

> "Hummer" on the front of it to the 5720 garage.  My response to foreman Kensil was "No".  Also the memorandum written by C. Kensil states, "On January 9, 2008 at approximately 12:30 PM inmate Raviv Laor Reg. #83907-054 stated that foreman Courtney George instructed him to transport a golf car marked "Hummer" on the front of it to the 5720 garage.  At approximately 1:00 PM I spoke to Courtney George and he stated that he did not give inmate Raviv Laor Reg. #83907-054 those instructions.
>
> Based upon the greater weight of evidence provided before me, your actions are consistent with a violation of Code 313, lying to a staff member, and Code 318 using any equipment that is not specifically authorized.

(See DHO Report at § V, Moran Decl. at Exhibit 2).  No witnesses were requested by petitioner, and no witnesses were called to testify.  As indicated, the DHO relied on the two memoranda, both dated January 9, 2008, by foremen Kensil and George.  (See DHO Report at §§ III.C and III.D).

The DHO imposed sanctions including, 15 days of disciplinary segregation suspended for 180 days pending clear conduct, and 60 days loss of commissary privilege for the Code 313 violation; and 15 days of disciplinary segregation suspended for 180 days pending clear conduct, 60 days loss of phone privileges and 7 days loss of GCT for the Code 318 violation.  (DHO Report at Section VI).  The DHO gave the following reasons for the action taken:

> The behavior on the part of any inmate to lie or provide staff with false information threatens the ability of the staff member to complete assigned tasks and effectively deal with and control the inmates in the area.  Additionally, misinformation provided by inmates may lead to safety hazards or situations of a serious nature.  The sanction(s)

6

> imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions.
>
> The action on the part of any inmate to use any equipment that is not specifically authorized threatens the security of the institution.  If an inmate is using equipment that is not specifically authorized, he is not properly supervised and would be able to commit other acts of a more serious nature.

(DHO Report at § VII).

A copy of the DHO Report was provided to Laor on January 28, 2008.  (DHO Report at § IX).  Laor timely filed an administrative appeal (Appeal No. 482426-R2) from the DHO decision to the Regional Director.  Laor claimed that he was an authorized user of a LEAP vehicle (golf cart), and that there was no formal procedures for taking and using golf carts.  On March 31, 2008, the Regional Director, D. Scott Dodrill, denied Laor's appeal, finding as follows:

> The foremen where you worked did not support your claim for neither one stated they gave you orders to take the golf cart to the garage.  Further, you admit you did not ask for permission to drive the golf cart.  You claimed you told a Foreman, who was on the phone, that you were taking the golf cart to the garage.  He waived you away.  Instead of waiting for him to finish his phone call, you took off.  You did not have staff authorization to use the golf cart.  As to your claim that the UDC did not provide you documents, there is no indication in the DHO report that you had raised this issue.  Further, you have not shown you were prejudiced in your ability to prepare a defense.
>
> Your claim that you are an authorized LEAP driver is irrelevant.  You took a golf cart without seeking your supervisor's permission.  You then lied about this to another staff member.  The DHO correctly found you had committed the prohibited acts of Lying and Using Equipment without Authorization.  We find the DHO reasonably determined you committed these offenses.  Also, the DHO's

>decision to expunge one of the charges does not require him to expunge all of the charges.

(March 31, 2008 Response from the Regional Director, Moran Decl. at Ex. 3).

Laor next promptly filed a Central Office Administrative Remedy Appeal. The Administrator of National Inmate Appeals likewise supported the DHO's findings and the sanctions imposed in a response dated May 28, 2008. In denying Laor's appeal, the National Inmate Appeals specifically found:

>Our review reveals substantial compliance with Program Statement 5270.07, _Inmate Discipline and Special Housing Units_. This P.S. states that the decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. Accordingly, we find that the DHO detailed in Section V of the DHO Report the specific evidence relied upon to support a finding that you committed the prohibited acts of Lying or Providing a False Statement to a Staff Member, Code 313 and Using Equipment not Authorized, Code 318 and we agree that it is reasonable to make that finding. You admitted you did not ask for permission to drive the golf cart. You claimed you told a Foreman, who was on the phone, that you were taking the golf cart to the garage. He waived you away. Instead of waiting for him to finish his phone call, you took off. Finally, you did not have staff authorization to take the cart. Therefore, we find that the required disciplinary procedures were substantially followed, the greater weight of the evidence supports the decision, and the sanctions imposed were appropriate for the offense and in compliance with policy. Your appeal is denied.

(May 28, 2008 National Inmate Appeals Response, Moran Decl. at Exhibit 4).

Thereafter, on or about July 15, 2008, Laor filed this

8

§ 2241 habeas petition.  Respondents admit that Laor has exhausted his administrative remedies before bringing this habeas action.  An answer with the relevant administrative record was provided on or about December 15, 2008.  Laor filed a reply on January 28, 2009.

## II.   CLAIMS PRESENTED

Laor claims that he was denied procedural due process in violation of the Fifth Amendment.  Specifically, he alleges that he was an authorized user of the LEAP vehicles (golf carts) and that there were no formal procedures for taking and using the golf carts.  He also claims he was denied the opportunity to present a defense because his requests for documentary evidence were ignored.

Respondents contend that there was no deprivation of due process and that there was sufficient evidence to support the disciplinary sanctions imposed.

## III.   DISCUSSION

### A.  Standard of Review

Laor seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[3]  That section states that the writ will not be

---

[3] United States Code Title 28, Section 2241, provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions
>
> (c) The writ of habeas corpus shall not extend to a

extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  Applicable Regulations

The Federal Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq. Prohibited acts are categorized according to the severity of the conduct. Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate." The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5. Incident reports are prepared in accordance

---

prisoner unless-   (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k). The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f). In this case, referral of the incident report to the DHO was made because the UDC does not have the authority to disallow good conduct time.

DHO hearing procedures are set forth at § 541.17. These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d). The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions. 28 C.F.R. §

541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  <u>Id</u>.

These procedures are intended to meet or exceed the due process requirements prescribed by <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).  <u>See</u> <u>Von Kahl v. Brennan</u>, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  <u>Merits of Petitioner's Claims</u>

1.  *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. CONST. amend. XIV.  In <u>Wolff v. McDonnell</u>, <u>supra</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  <u>Wolff</u>, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  <u>See</u> <u>Von</u>

12

Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72). However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

Here, there is no support for a claim that Laor was denied procedural due process. Laor received at least 24 hours advance written notice of the charges before his DHO hearing. He also received a written statement by the fact finder (the DHO) as to the evidence relied on and the reasons for the disciplinary action in a timely manner. Laor also was not denied an opportunity to call witnesses and present documentary evidence in his defense. While he claims that his requests for documents was ignored, there is no indication in the DHO Report that he made any specific request for documents that were denied. Moreover, his petition does not explain how the "requested" documents would have negated the DHO's findings, and this Court finds no merit to petitioner's contention.

For instance, Laor alleges that he was unable to present a list of the golf carts' authorized users at his DHO hearing. He claims that because he was an authorized user, the list would

13

have been a complete defense to the Code 318 charge.  However, the evidence relied upon by the DHO, namely, the statements by Laor's foremen, confirm that Laor was not given specific permission to take the golf cart to the garage.  Moreover, Laor admits that he did not get express permission to do so.  Thus, even if the list of authorized users was presented at the hearing it would not have been dispositive on the issue of whether Laor had specific authorization to take the golf cart to the garage, and therefore, it likely would not affected the DHO's decision.  The DHO was aware of Laor's claim that Laor had general permission to use the golf carts when he made his determination.

Accordingly, this Court notes that the procedures set forth in Wolff and Von Kahl, were followed in all respects.  The record does not support any claim that Pachtinger was denied due process, and this claim will be denied for lack of merit.

2. *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The

14

>         fundamental fairness guaranteed by the Due Process
>         Clause does not require courts to set aside decisions
>         of prison administrators that have some basis in fact.
>         Revocation of good time credits is not comparable to a
>         criminal conviction, and neither the amount of evidence
>         necessary to support such a conviction, nor any other
>         standard greater than some evidence applies in this
>         context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover, the Court stated:  "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  Id. at 457.

　　　Here, there is sufficient evidence noted by the DHO in reaching his determination.  The DHO's Report demonstrates that the DHO considered and relied upon the following evidence in its determination that petitioner violated Code 313 (Lying or providing a false statement to a staff member) and Code 318 (using any equipment that is not specifically authorized): (1) the statements from Laor's foremen confirming that they were not asked by Laor nor did they give specific authorization to Laor to take the golf cart to the garage; (2) Laor's admission that he never asked his boss to take the golf cart to the garage because the boss was on the phone and waived petitioner away; and (3) the fact that Laor had told a staff member that he had permission to use the golf cart that day.  The DHO reasoned that the greater

weight of evidence showed that Laor's actions were consistent with the charged wrongful conduct.

Thus, the DHO's Report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary." Hill, 472 U.S. at 457. There was more than sufficient evidence to support the DHO finding that Laor violated Code 313 and Code 318. He was not found guilty of violating Code 319, using equipment contrary to instructions and safety procedures, as originally charged.

Based upon this evidence as relied upon by the DHO, and without any sufficiently credible contradictory evidence submitted by petitioner, this Court finds that Laor's right to due process was not violated by the determination of the DHO. The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt. See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Laor has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding. Accordingly, this habeas petition will be denied for lack of merit.

16

D.   Petitioner's Claim for Money Damages

Laor also seeks money damages to compensate him for the alleged violations of procedural due process during his prison disciplinary proceedings.

In Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court left open the question whether a habeas petition is available to challenge prison conditions. 411 U.S. at 499-500. The Court of Appeals for the Third Circuit has held, however, that a district court does not have subject matter jurisdiction under 28 U.S.C. § 2241 over a habeas petition that does not challenge the fact or duration of confinement. Royce, 151 F.3d at 118.

"The label placed on a petition, however, is not determinative." Id. A mis-labeled petition "should not be dismissed until other legitimate avenues of relief are administered." Id.

Here, as mentioned above, Laor is seeking money damages for alleged due process violations. Where the relief sought, in this instance, money damages, would not serve to diminish the length of his incarceration, Laor's claim for money damages can be brought only as a civil rights action under Bivens,[4] not a habeas corpus action under § 2241. Accordingly, the Court does not have

---

[4]   Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

17

subject matter jurisdiction under § 2241 to consider Laor's claim for damages.

Moreover, because the underlying claim for damages, the alleged due process violations, has been determined by this Court to be without merit in connection with Laor's claim for habeas relief (expungement of the disciplinary findings and restoration of GCT), this Court finds no basis to sever the claim for money damages to be treated as a separate civil action under <u>Bivens</u>. Accordingly, the claim for money damages is dismissed.

## **CONCLUSION**

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. Petitioner's claim for money damages will be dismissed for lack of subject matter jurisdiction. An appropriate Order accompanies this Opinion.

<u>s/Robert B. Kugler</u>
ROBERT B. KUGLER
United States District Judge

Dated: May 15, 2009